CITY OF BOSTON *vs.* BOSTON POLICE SUPERIOR OFFICERS FEDERATION. No. 88-P-1303. July 23, 1990. *Police,* Assignment of duties, Collective bargaining. *Labor,* Collective bargaining, Public employment, Arbitration. *Arbitration,* Police, Scope of arbitration, Collective bargaining. *Municipal Corporations,* Collective bargaining.

Once again we are presented with a case which asks whether an arbitrator has impermissibly poached on nondelegable managerial prerogatives of a governmental body. We conclude that the arbitration award did not work such a transgression and that a judge of the Superior Court, acting under G. L. c. 150C, § 11, correctly declined to vacate the award. The judgment which was entered, and from which the city appeals, confirmed the award.

There is in the organization chart of the Boston police department the position of "day duty supervisor." When the commanding officer of a district is absent, the day duty supervisor assumes responsibility for the conduct of affairs within the district. Lieutenants customarily filled those posts in the several administrative districts of the department. In 1984, Sergeant Cornelius Murphy was appointed to fill the day duty slot in Area A. The collective bargaining agreement between the Boston Police Superior Officers Federation (the "union") and the city, in Article XIII, § 1, provided that an employee who does temporary service in a higher rank should draw the pay of the higher rank starting with the sixth consecutive day of service in the higher rank duty. Sergeant Murphy performed the lieutenant-grade functions of the day duty supervisor for twelve to thirteen months but received no extra pay. That failure to adjust Murphy's pay became the

subject of a grievance arbitration which culminated in an award of back pay to Murphy. We infer — the record is obscure on the point — that the city disbursed back pay in accordance with the award in Murphy's favor.

Following the Murphy arbitration, assignments of officers below the rank of lieutenant to day duty supervisor took on a turnstile pattern; the police department rotated sergeants through the job every five days. That practice became the subject of a new arbitration proceeding which culminated in the award appealed from. The award required the city to promote someone to day duty supervisor in Area A and to "make whole any sergeant who would have been properly selected for temporary service in the [d]ay [d]uty [s]upervisor position in Area A but for the [c]ity's improper rotation of sergeants through the position." That is the award confirmed.

In support of its position that the five-day assignment plan for day duty supervisor is not an arbitrable question, the city relies on the cases which emphasize the broad administrative control and discretion of the police commissioner of Boston. See *Boston* v. *Boston Police Patrolmen's Assn.*, 403 Mass. 680, 684 (1989) (number of officers to be deployed in a patrol car); *Boston Police Patrolmen's Assn.* v. *Police Commr. of Boston*, 4 Mass. App. Ct. 673, 674-675 (1976) (assignment of civilian observers to patrol cars); *Boston* v. *Boston Police Patrolmen's Assn.*, 8 Mass. App. Ct. 220, 226 (1979) (issuance of service revolvers). See also *Boston Police Patrolmen's Assn.* v. *Boston*, 367 Mass. 368, 371 (1975). Those cases rest largely on St. 1906, c. 291, §§ 10, 11, and 14, as appearing in St. 1962, c. 322, § 1. Decisions which are in the zone of managerial authority are nondelegable and, to the extent subjects within that zone find their way into a collective bargaining agreement, the provisions of the collective bargaining agreement are not enforceable. *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 502 (1970). *Boston* v. *Boston Police Patrolmen's Assn.*, 403 Mass. at 684. *Taunton* v. *Taunton Branch of the Mass. Police Assn.*, 10 Mass. App. Ct. 237, 243 (1980). The demands of public safety, *ibid.*, and a disciplined police force underscore the importance of management control over matters such as staffing levels, assignments, uniforms, weapons, and definition of duties.

As explained, however, in *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 563-564 & n.5 (1983), the means of implementing managerial decisions, especially touching on compensation, may be the subject of an enforceable provision in a collective bargaining agreement. See also *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 378 Mass. 65, 70-73 (1979); *School Comm. of Norton* v. *Norton Teachers' Assn.*, 23 Mass. App. Ct. 1002, 1004 (1987). Compare *Boston* v. *Boston Police Superior Officers Fedn.*, 9 Mass. App. Ct. 898 (1980) (commissioner could make an assignment on the basis of experience in busing in derogation of temporary assignment procedures prescribed in collective bargaining agreement). What is at issue in this case is not a matter of

scope of duties, deployment of personnel, fitting particular capabilities to the job or anything else that relates to public safety and the efficiency with which the department runs. What is at issue is simply what officers who fill the day duty shift supervisor slot shall be paid. Compensation is classically within the realm of collective bargaining. The union's claim that the police department had adopted a subterfuge to avoid a compensation provision of the collective bargaining agreement was arbitrable, and the award was rightly confirmed.

*Judgment affirmed.*

*Louis Scrima*, Special Assistant Corporation Counsel, for the city of Boston.

*Alan H. Shapiro* for the defendant.