BLACKSTONE-MILLVILLE REGIONAL SCHOOL DISTRICT *vs.* LESTER MARONEY & others[1] (and a companion case[2]). June 12, 1981. The plaintiff (the school district), in the companion case unsuccessfully sought to stay, and in this case seeks to vacate, an arbitrator's award in favor of Maroney, a teacher in the school district's regional high school. A judge of the Superior Court denied the stay and another judge of that court refused to vacate the award. The school district contends that the grievance submitted to arbi-

---

[1] Edwin Parker, individually, and as a member of the Blackstone-Millville Regional District Educators' Association, and American Arbitration Association.

[2] An application, with the same parties, to stay the arbitration.

tration is not within the matters which may be submitted to arbitration under the applicable collective bargaining agreement.

The grievance arose out of a dispute in which Maroney "made use of a learning center [library] to socialize with students and became embroiled with the person in charge of the center." Maroney was ordered by the school's principal "to remain completely out of the . . . center . . . except when he was formally assigned to perform duties there by the principal's office." Maroney alleged as a grievance that this violated his rights as a teacher because too broad a remedy for the conduct of which he was accused. A second grievance was that the school's principal, at a meeting of teachers, gave undue publicity to a letter of rebuke of Maroney, an asserted violation of art. III(A) of the collective bargaining agreement which was designed to keep grievance procedures appropriately "confidential . . . at the procedural level involved."

The trial judge "on the language of the [collective bargaining] contract" itself reached the conclusion that the grievances were each arbitrable, either as involving "working conditions" under art. III(B)(1) of the contract or as "treatment . . . claimed to be unfair . . . [or] unjust" under art. III(B)(2) of the contract. The arbitration provision at "[l]evel [f]our" of the arbitration procedure, see art. III(C)(4), contains extremely broad language making grievances arbitrable within the proviso of art. III(C)(4), if they constitute "a question, problem of disagreement concerning the *interpretation* or *application* of *any* provision of . . . [the collective bargaining c]ontract" (emphasis supplied). We agree with the trial judge's concise, well-reasoned memorandum of decision.

The trial judge's decision appears to be consistent with *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113 (1977, "[u]nless . . . an arbitration clause is not susceptible to an interpretation that covers the asserted dispute . . . an order to arbitrate should not be denied"); *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. 116, 120 (1977, question whether certain issues are arbitrable may be submitted to an arbitrator to decide and if he "concludes that the issue is arbitrable, he may pass on the question whether the school committee adhered to *its* obligations"); *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Assn.*, 372 Mass. 121, 127 (1977). See *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 506 (1978, stay of arbitration "should not be allowed simply because a particular remedy which might be ordered . . . arguably might intrude on the nondelegable authority of a school committee"). We do not view the *Brown* case as precluding committing to the arbitrator the interpretation of the collective bargaining agreement including the arbitration clause, under as broad provisions as are contained in art. III(B)(2) and (C)(4), except where the subject matter to be arbitrated is one as to which the remedy necessarily will have a substantial impact on matters of policy or involve issues which a school committee may not delegate to arbitrators as a mat-

ter of law. See e.g. the *Dennis-Yarmouth* case, 372 Mass. at 118-121 (whether a nontenured teacher's contract should be renewed); the *Danvers* case, 372 Mass. at 109-113 (decision whether to grant tenure not arbitrable, but issue whether school committee followed agreed procedures is arbitrable); *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.*, 375 Mass. 522, 525-527 (1978, appointment of a principal); *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 797-800 (1980). *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 70-73 (1979), lays down the governing principles in a comprehensive discussion. We are of opinion that questions relating to the discipline of one teacher are not sufficiently a matter of policy to preclude (as nondelegable by the school committee) their submission to arbitration. We also hold that the broad language of the arbitration provision, art. III(B)(2), and (C)(4), already quoted, shows that the parties to the collective bargaining agreement intended to submit to arbitration, in the first instance, the question whether a particular issue was arbitrable under art. III, subject to judicial review of whether a particular issue submitted might intrude improperly upon nondelegable matters of policy. See *Triton Regional Dist. Sch. Comm.* v. *Triton Teachers Assn.*, 7 Mass. App. Ct. 873 (1979). See also *Wachusett Regional Dist. Sch. Comm.* v. *Wachusett Regional Teachers Assn.*, 6 Mass. App. Ct. 851 (1978); *Geller* v. *Temple B'nai Abraham*, 11 Mass. App. Ct. 917 (1981); G. L. c. 150E, § 8, as amended through St. 1978, c. 393, § 39. We recognize that art. III contains no provision *specifically* providing that an arbitrator is empowered to decide whether an issue submitted for his decision is arbitrable. See the *Southbridge* case, 375 Mass. at 504 n.2, *supra*.

*Judgments affirmed.*

Harold D. Gould, Jr., for the plaintiff.
Ann Clarke for the defendants.