# SCHOOL COMMITTEE OF WALTHAM *vs.* WALTHAM EDUCATORS ASSOCIATION.

Middlesex.   September 8, 1986. — December 3, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arbitration,* Collective bargaining, School committee, Judicial review, Authority of arbitrator. *School and School Committee,* Collective bargaining, Suspension from employment, Arbitration. *Contract,* Collective bargaining contract.

Where an arbitrator's award pursuant to a collective bargaining contract between a teachers' union and a school committee was within the scope of his reference, afforded no relief in excess of his authority, and "drew its essence from the collective bargaining agreement," a judge of the Superior Court could not properly order the award vacated by reason of errors of fact or law. [705-707]

Where, after an arbitration proceeding between a teacher and a school committee, the arbitrator found that, in the incident giving rise to the dispute, the teacher's striking of a student had been unintentional, an award in favor of the teacher violated no statutory prohibition against corporal punishment. [707]

Under the applicable collective bargaining agreement between a teachers' union and a school committee, the arbitrator who heard the case of a teacher who had been suspended following a classroom incident acted properly in receiving evidence and deciding the matter de novo, and the scope of the arbitrator's review was not limited to that of a court acting under G. L. c. 71, c. 43A. [707-708]

CIVIL ACTION commenced in the Superior Court Department on June 7, 1985.

The case was heard by *Herbert Abrams,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Brian A. Riley* for the defendant.

*Richard W. Murphy* for the plaintiff.

NOLAN, J. We reverse the judgment of the Superior Court, which vacated an arbitrator's award in favor of Samuel Poulten (the teacher).

The teacher was serving with the benefit of tenure at Waltham High School when, on January 17, 1984, during a class in social studies, he struck a student with his hand. Immediately before the incident, he had escorted a student from the room. During his absence a student (not the object of the blow) had put a tack on the teacher's chair. When he returned and sat down, the tack penetrated his testicle. He jumped from his chair and hit a student. Whether he struck the student intentionally or as a result of the shock from the tack's penetration is important and will be discussed later. When he realized that the student whom he hit was not the student who had ambushed him by placing the tack on his chair, the teacher offered a pointer to the victim of his blow and suggested that the student hit him. The student declined. The teacher reported the incident immediately to the authorities at the school but subsequently referred to it as an accident. Ultimately, the school committee (committee), after a hearing, voted unanimously to suspend the teacher for ten days without pay. The teacher then filed a grievance and exercised his rights to arbitration under the collective bargaining agreement (agreement).

The arbitrator conducted a hearing at which several witnesses testified, including some of the students and the teacher. The issue for arbitration was framed as follows: "Whether or not the School Committee violated Article 1.2 of the Collective. Bargaining Agreement when it suspended/disciplined for ten days without pay, the grievant, Samuel Poulten? If so, what shall the remedy be?"[1] In relevant part, art. I, § 1.2, provides: "No tenured employee in a classification covered by this agreement will be discharged, disciplined, or reprimanded or reduced in rank or compensation without just cause; just cause including, but not being limited to inefficiency, incapacity, conduct unbecoming such employee, or insubordination."

The arbitrator ruled that the committee had violated art. I, § 1.2, when it suspended the teacher because the suspension was without just cause, and made an award ordering the committee to reimburse the teacher for the loss of pay for ten days

---

[1] A second issue was framed but it plays no part in the appeal.

and noting that the committee "if it so desires [may] issue a letter of warning to Mr. Poulten" regarding the incident with the pointer.

The defendant, Waltham Educators Association (association), moved to confirm the award. A judge of the Superior Court denied the motion and entered an order vacating the award for a variety of reasons which will be treated as they surface in the issues raised by the association's appeal. We allowed the association's application for direct appellate review.

1. *Inconsistent and contradictory findings in award.* The judge ruled that the "arbitrator's award is unfounded in reason and fact." A careful reading of the arbitrator's findings lends some support to this conclusion. The arbitrator seemed at first to imply that the teacher's act in striking the pupil was the result of shock to his nervous system. However, he also appeared to retreat from that by finding a time interval between the teacher's contact with the tack and delivery of the blow, indicating, perhaps, some reflection. Finally, the arbitrator returned to his first premise, finding that the act was not intentional but the result of "shock." The judge's criticism is well-founded but his action in vacating the award is error.

Judicial review of an arbitrator's award is governed by G. L. c. 150C, § 11 (1984 ed.), which is set out in material part in the margin, and by § 12.[2] The statute provides for a very limited scope of review. Whether we view the judge's criticism of the award as a charge of error of law or of error of fact is not important, because an arbitrator's award may not be vacated on either ground. *Trustees of B. & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 386, 391 (1973).

Absent fraud, the court's inquiry is confined to the question whether the arbitrator exceeded the scope of his reference or

[2] General Laws c. 150C, § 11 (*a*), provides that "Upon application of a party, the superior court shall vacate an award if:— (1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law."

awarded relief in excess of his authority. See *School Comm. of W. Springfield* v. *Korbut,* 373 Mass. 788, 791-792 (1977). The fact that an arbitrator has been found to have committed an error of law does not, by itself, mean that he has exceeded his authority. *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187-188 (1984).

Clearly, this award is squarely within the reference which raised the issue whether the committee violated art. I, § 1.2, of the collective bargaining agreement. The award was entirely responsive to that issue in finding a violation.

As to whether the award exceeded the arbitrator's authority, we must consider the provisions of the statute, G. L. c. 150E, § 8, set forth in the margin,[3] which authorize establishment of a grievance procedure in collective bargaining agreements between public employers and their employees. This case clearly falls within language of § 8, which provides for resolution of grievances and the election of arbitration in matters involving "suspension, dismissal, removal or termination" of public employees. See *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional School Dist. Comm., ante* 695 (1986), and *School Comm. of Newton* v. *Labor Relations Comm'n,* 388 Mass. 557, 563 n.4 (1983).

Finally, in connection with the arbitrator's interpretation of the agreement, we have conceded only that "[c]ourts do con-

---

[3] General Laws c. 150E, § 8, as amended by St. 1978, c. 393, § 39, provides that "The parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement. In the absence of such grievance procedure, binding arbitration may be ordered by the commission upon the request of either party; provided that any such grievance procedure shall, wherever applicable, be exclusive and shall supercede any otherwise applicable grievance procedure provided by law; and further provided that binding arbitration hereunder shall be enforceable under the provisions of chapter one hundred and fifty C and shall, where such arbitration is elected by the employee as the method of grievance resolution, be the exclusive procedure for resolving any such grievance involving suspension, dismissal, removal or termination notwithstanding any contrary provisions of sections thirty-nine and forty-one to forty-five, inclusive, of chapter thirty-one, section sixteen of chapter thirty-two, or sections forty-two through forty-three A, inclusive, of chapter seventy-one."

sider whether an arbitrator's award draws its essence from the collective bargaining agreement." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester, supra.* The award here manifestly meets this test.

2. *Corporal punishment.* The judge ruled that "[t]he award violates the state's prohibition against corporal punishment." This is simply not so. Despite the arbitrator's ambiguous and apparently contradictory findings related to the teacher's striking the student, we do not view his award as derogating from the statute which, with exception not here material, prohibits corporal punishment. G. L. c. 71, § 37G (1984 ed.). Corporal punishment, if it means anything, must be intentional. It is difficult to conceive an unintentional act, however forceful, as corporal punishment. The arbitrator, despite his linguistic failings, found the teacher's act to be unintentional. Therefore, it could not qualify as corporal punishment.

3. *Nature of arbitrator's hearing.* The committee argues that the arbitrator should not have heard the evidence and decided the case de novo. It draws a parallel between the scope of review under G. L. c. 71, § 43A, and the arbitrator's authority, though it should be noted that § 43A is not available to a teacher who is suspended as contrasted with one who has been "dismissed, demoted, or removed." However, the agreement makes no distinction between dismissal and suspension but uses the broader terms "discharged" and "disciplined." Suspension is clearly a species of discipline. The committee argues that the arbitrator's review of the committee's action should be no broader than judicial review under § 43A. We disagree. Under § 43A, the Superior Court judge's inquiry is whether the committee's action in disciplining the teacher is justifiable, which has been interpreted to focus on whether the action was "arbitrary, irrational, unreasonable, in bad faith, or irrelevant to the committee's task" of operating a good school system. *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 308 (1981).

The subject of suspension is unquestionably arbitrable under the agreement. See *Blackstone-Millville Regional School Dist.* v. *Maroney,* 12 Mass. App. Ct. 877 (1981). The governing

statute, G. L. c. 150E, § 8, provides that the "parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement." The arbitrator's duty under the agreement authorized by G. L. c. 150E, § 8, is to determine whether there was just cause for disciplining the teacher. Holden, Grievance Arbitration, Portrait of a Process — Collective Negotiations in Public Employment 382 (Labor Relations Press 1979). See *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional School Dist., supra*. To achieve this end an evidentiary hearing is essential, though a narrower scope of the arbitrator's authority could be achieved through an agreement. Griffin, Judicial Review of Labor Arbitration Awards, reprinted in Arbitrating Labor Cases 204-205 (1974). General Laws c. 150C, § 5, specifically provides for a full hearing with witnesses. Though a search of cases in the Commonwealth yields no jurisprudence on this issue, it seems that the result we reach is inherent in the very nature of the process. The only case material to this issue, which we have been able to discover, held that an arbitration panel was entitled to hold a de novo hearing in deciding whether a school committee had discharged an employee for just cause. *Fortney* v. *School Dist. of W. Salem,* 108 Wis. 2d 167, 183 (1982).

In sum, we see nothing offensive to statutory construction or public policy in the more generous provisions for review in an arbitrator's hearing than those provided for a court under § 43A. If the committee is disturbed by the breadth of this review, it can negotiate a narrower scope when an agreement is again collectively bargained.

*Judgment reversed.*